# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

ANTONIO SERNA,

    Plaintiff,

v.                                                              Civ. No. 23-76 MLG/GJF

FNU ANDRADE,

    Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

THIS MATTER is before the Court on the *Martinez* Report [ECF 45] and Defendant Jose Andrade's Motion for Summary Judgment on Antonio Serna's Prisoner Civil Rights Complaint ("Dr. Andrade's Motion for Summary Judgment") [ECF 47], both filed on April 8, 2024, and on the following motions filed by Plaintiff: (1) Motion for Summary Judgment [ECF 42], filed March 15, 2024; (2) Motion for Appointment of Counsel [ECF 49] filed April 12, 2024; (3) Motion for Inspection of Documents [ECF 51], filed April 18, 2024; (4) Second Motion for Appointment of Counsel [ECF 53], filed May 9, 2024; (5) Third Motion for Counsel and Extension [ECF 54], filed May 9, 2024; (6) Motion to Go to Trial [ECF 56], filed May 13, 2024; (7) Fourth Motion for Appointment of Counsel [ECF 59],[2] filed May 16, 2024; (8) Motion to Set Trial [ECF 61], filed June 10, 2024; (9) Fifth Motion for Appointment of Counsel [ECF 62], filed June 10, 2024; and (10) Sixth Motion for Appointment of Counsel [ECF 66], filed December 30, 2024.

---

[1] The undersigned files this Proposed Findings and Recommended Disposition pursuant to the presiding judge's Order of Reference, which was entered October 10, 2024. ECF 64.

[2] Although the CM/ECF docket text refers to ECF 59 as Plaintiff's "Third Motion to Appoint Counsel," it is more appropriately described herein as his "Fourth Motion for Appointment of Counsel" because Plaintiff also sought the appointment of counsel in ECF 54. It follows that ECF 62 is more appropriately described as Plaintiff's Fifth Motion for Appointment of Counsel and ECF 66 his Sixth Motion for Appointment of Counsel.

For the reasons that follow, the Court **RECOMMENDS** that Dr. Andrade's Motion for Summary Judgment [ECF 47] be **GRANTED** and that each of Plaintiff's pending motions [ECFs 42, 49, 51, 53–54, 56, 59, 61–62] be **DENIED**. The Court **FURTHER RECOMMENDS** that Plaintiff's Complaint [ECF 1] be **DISMISSED WITH PREJUDICE**.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Currently incarcerated at the Southern New Mexico Correctional Facility ("SNMCF"), Plaintiff filed his *pro se* Complaint on January 26, 2023. ECF 1. Construed liberally, the Complaint asserts that Dr. Andrade acted negligently and with deliberate indifference to his medical needs. *See id*. Plaintiff alleges that Dr. Andrade negligently treated his "bad" back, shoulder, knee, and left heel. Plaintiff further alleges that Dr. Andrade acted with deliberate indifference towards Plaintiff's medical needs by ignoring instructions from the physician who discharged Plaintiff following a three-week hospital stay. *Id*. at 2–3, 8. Accepting these facts as true, the Court concluded that Plaintiff sufficiently asserted claims against Dr. Andrade to survive initial review under 28 U.S.C. § 1915(e)(2). *See* ECF 11.  Accordingly, Judge Robbenhaar ordered Dr. Andrade to file a report pursuant to *Martinez v. Aragon*, 570 F.2d 317, 319–20 (10th Cir. 1987) [ECF 26], which Defendant filed on April 8, 2024 [ECF 45]. Dr. Andrade's *Martinez* Report includes relevant portions of Plaintiff's inmate medical records, the professional services contract between the New Mexico Corrections Department and Wexford Health Sources, Inc., affidavits of Dr. Andrade and physical therapist Jovita Tieso, and relevant NMCD policies. ECF 45.

Early on, Plaintiff filed various motions seeking rulings on the merits in his favor [*see* ECFs 18; 24; 35; 36], which the Court denied without prejudice as premature [*see* ECFs 40; 43; 44; 60]. In addition, the Court denied without prejudice Plaintiff's previous motions to appoint counsel [ECFs 3; 7; 31; 37] and denied as premature Plaintiff's Motion to Set Trial [ECF 20]. *See*

ECFs 11; 41; 60. Now pending before the Court are Plaintiff's six renewed motions for appointment of counsel [ECFs 49; 53; 54; 59; 62; 66], Plaintiff's two renewed motions for trial [ECF 56; 61], Plaintiff's Motion for Production of Documents [ECF 51], and both parties' Motions for Summary Judgment [ECFs 42; 47].

## II.    PLAINTIFF'S MOTIONS FOR COUNSEL AND DOCUMENTS

Before turning to the merits of Plaintiff's claims, the Court takes up seven motions in which Plaintiff seeks the appointment of counsel and production of documents.

As to Plaintiff's motions for counsel, "[c]ourts are not authorized to appoint counsel in § 1983 cases; instead, courts can only 'request' an attorney to take the case" on a pro bono basis. *Rachel v. Troutt*, 820 F.3d 390, 396 (10th Cir. 2016). This decision is a matter of discretion. *Toevs v. Reid*, 685 F.3d 903, 916 (10th Cir. 2012). Relevant factors include "the merits of the claims, the nature of the claims, [the inmate's] ability to present the claims, and the complexity of the issues." *Rachel*, 820 F.3d at 397. Considering these factors, as it has on previous occasions [*see* ECFs 11; 16; 41], the Court recommends that Plaintiff's motions be denied. The facts are straightforward, the allegations are discernable, and the Court recommends herein that summary judgment be granted in favor of Dr. Andrade, such that no trial is necessary. Consequently, the Court recommends that each of Plaintiff's Motions for Appointment of Counsel [ECFs 49; 53; 54; 59; 62; 66] be denied.

Next, Plaintiff "requests that [D]efendant Andrade produce for inspection and copying [specified] documents." ECF 51 at 1. Among the evidence he seeks is a "2005 volume chart 1," his "complete prison records," "all medical records of [P]laintiff from the time of his incarceration in NMCD through and including the date of . . . response," and evidence and reports about "incident[s]" in 2005, 2009, and October 2022. *Id*. at 1–2.

Pursuant to Federal Rule of Civil Procedure 56(d), the Court may permit additional discovery before ruling on a summary judgment motion if the nonmovant submits an affidavit or declaration showing he cannot present facts essential to opposing the motion. *See* Fed. R. Civ. P. 56(d).

> In the Tenth Circuit, a non-movant requesting additional discovery under Rule 56(d) must specify in the affidavit (1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable the party to obtain those facts and rebut the motion for summary judgment.

*Adams v. C3 Pipeline Constr. Inc.*, 30 F.4th 943, 968 (10th Cir. 2021) (internal quotation marks and citation omitted). The Court "may not look beyond the affidavit" for these required elements. *Id.* (quoting *Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1110 (10th Cir. 2017)).

Plaintiff's Motion to Produce Documents is not in affidavit form; nor does it satisfy the other requirements of Rule 56(d). Rather, Plaintiff simply requests a broad array of documents without specifying any relevant facts that may be contained therein. To the extent he seeks his "complete prison records," a "2005 volume chart 1," or reports about "incidents" in 2005 and 2009, it is not clear to the Court how such records would have any relevance to his claims. As for Plaintiff's request for medical records from the time during which he was incarcerated in NMCD, Dr. Andrade represents that his *Martinez* Report already includes those medical records that relate to Plaintiff's medical negligence and deliberate indifference claims, including records documenting treatment Plaintiff received after filing his Complaint.  *See* ECF 45 at 5–6. For his part, Plaintiff does not identify any relevant records that were omitted from the *Martinez* Report that could be used to rebut Dr. Andrade's summary judgment motion.

Because "[s]peculation cannot support a Rule 56(d) motion," *F.D.I.C. v. Arciero*, 741 F.3d 1111, 1116 (10th Cir. 2013), the Court recommends Plaintiff's Motion to Produce Documents [ECF 51] be denied.

## III.    MOTIONS FOR SUMMARY JUDGMENT

### A.  Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, a court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when it "might affect the outcome of the suit under the governing [substantive] law," and a dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant must first demonstrate "the absence of a genuine issue of material fact and entitlement to judgment as a matter of law" prima facie. *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If the movant meets this initial burden, the burden then shifts to the nonmovant to set forth specific facts from which a rational trier of fact could find for the nonmovant." *Id.* (quotations omitted). The nonmovant must do so "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein"—all of which must be admissible evidence. *Id.* at 1309; *accord* Fed. R. Civ. P. 56(c).

"A 'judge's function' in evaluating a motion for summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Salazar-Limon v. City of Houston*, 137 S. Ct. 1277, 1280 (2017) (Sotomayor, J., dissenting from denial of cert.) (quoting *Anderson*, 477 U.S. at 249). In evaluating such a motion,

the Court's discretion is limited in two respects. First, the Court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the . . . motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Second, the Court can only consider admissible evidence. *Standish v. Jackson Hole Mt. Resort Corp.*, 997 F.3d 1095, 1107 (10th Cir. 2021) (emphasis removed).

For purposes of summary judgment, a prisoner's complaint is treated as an affidavit if it alleges facts based on his personal knowledge and has been sworn under penalty of perjury. *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citation omitted). A *Martinez* Report is also treated as an affidavit and can be used in determining whether to grant summary judgment if it is "supported by affidavits or other materials provided under oath." *Id.* at 1110–11 (citations omitted). A court cannot resolve materially disputed factual issues by accepting a *Martinez* report's findings when the plaintiff has presented conflicting admissible evidence. *Id.* at 1111. Conclusory allegations without specific supporting facts, however, have no probative value and cannot create a genuine issue of fact. *See Fitzgerald v. Corrs. Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005); *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004); *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992). Additionally, courts disregard statements of mere belief in affidavits. *Argo v. Blue Cross and Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006). Even so, a court must liberally construe the allegations contained in a *pro se* plaintiff's pleadings. *See Northington v. Jackson*, 973 F.2d 1518, 1520–21 (10th Cir. 1992) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)).

### B. Plaintiff's Motion for Summary Judgment [ECF 42]

Without setting forth any material facts or citing any evidence in support of his claims, Plaintiff urges the Court to grant summary judgment in his favor "based on the pleadings." *See*

ECF 42 at 1. In support, he contends that Dr. Andrade has failed to defend or answer and has "not done nothing to take [his] claims seriously." *Id*. To the contrary, Dr. Andrade filed his Answer on October 10, 2023, well before Plaintiff moved for summary judgment. *See* ECF 22. In his Answer, Dr. Andrade denied that Plaintiff was entitled to relief on his claims and asserted affirmative defenses. *See id.*

Neither party having moved to dismiss or for judgment on the pleadings, the case proceeded beyond the pleading stage when the Court directed Dr. Andrade to prepare and file a *Martinez* Report to assist in evaluating the merits of Plaintiff's claims. *See, e.g*., ECF 26 at 1 (concluding that Plaintiff's Complaint was not subject to summary dismissal under 28 U.S.C. 1915A and ordering *Martinez* Report). On April 8, 2024, Dr. Andrade filed both his *Martinez* Report and a Motion for Summary Judgment [ECFs 45, 47], which the Court takes up below.

Plaintiff's own summary judgment motion, which he filed just before Dr. Andrade submitted his *Martinez* Report, falls far short of the applicable summary judgment standard. That is, resting on the erroneous position that Dr. Andrade failed to answer or defend, Plaintiff fails to set forth any material facts or to demonstrate that he is "entitled to judgment as a matter of law" on his claims. *See* Fed. R. Civ. P. 56(a). Accordingly, the Court recommends that Plaintiff's Motion for Summary Judgment [ECF 42] be denied.

### C. Dr. Andrade's Motion for Summary Judgment [ECF 47]

Doctor Andrade asks the Court to enter summary judgment as to each of Plaintiff's claims against him, and he sets forth material facts and cites evidence contained in his *Martinez* Report. ECF 47. In response, Plaintiff filed his "Answer to Martinez Report" [ECF 55] in which he accuses Dr. Andrade of "tr[ying] to cover up important documents with useless records." ECF 55 at 1. Plaintiff contends that Dr. Andrade refused to provide "very important medications" and "took . .

. 7 months to reschedule another follow up" colonoscopy. *Id* at 1–2. Plaintiff adds that there was "blood in [his] stool[,] pain on [his] right side[,] yet [Dr. Andrade] says 'No' to medication [and] 7 months later he sets up a colonoscopy." *Id*. at 2. According to Plaintiff, Dr. Andrade is "responsible for all inju[ies]" to include "a bone spur, right knee, left shoulder[,] lower back" because he "refused to address them." *Id*. at 1–2.

In addition, Plaintiff filed a Motion to Go to Trial [ECF 56] and Motion to Set Trial [ECF 61] (together the "motions for trial"), which reiterate the allegations contained in the Complaint and urge the Court to set his case for trial. In his Motion to go to Trial, Plaintiff contends that Dr. Andrade "mistreated all [his] injur[ies,] making them worse" and provided inadequate medical care by "waiting 7 months" to obtain the follow-up care recommended after his October 2022 hospitalization. ECF 56 at 1. In his Motion to Set Trial, Plaintiff alleges that Dr. Andrade refused to provide him with his "discharge medication" and that "it took . . . 7 months to send [him] back" for a colonoscopy. ECF 61 at 1.

Together with Plaintiff's Answer to Martinez Report, the Court construes Plaintiff's motions for trial as his collective response in opposition to Dr. Andrade's Motion for Summary Judgment. Yet none of these filings "set forth specific facts from which a rational trier of fact could find for" Plaintiff. *See Libertarian Party of N.M.*, 506 F.3d at 1309. Nor do they comply with this District's Local Rule 56.1, which requires the non-movant to provide "a concise statement of the material facts . . . as to which the non-movant contends a genuine issue does exist" and to "refer with particularity to those portions of the record upon which the non-movant relies, . . . stat[ing] the number of the movant's fact that is disputed." *Id*. D.N.M.LR-Civ. 56.1(b). At most, Plaintiff attaches a handful of medical records to his Motion to Go to Trial: the report from an October 27, 2022 colonoscopy that Plaintiff underwent while hospitalized and Dr. Andrade's February 6, 2023

and March 6, 2023 referral request forms. *See* ECF 56 at 3–6. The Court considers these records in the context of Dr. Andrade's Motion for Summary Judgment, but for reasons discussed below, these documents do not support Plaintiff's claims.

### 1. *Undisputed Material Facts*[3]

Since approximately 2015, Dr. Andrade has served as the Medical Director at SNMCF. ECF 47 at UMF 1 (citing ECF 45-3 at 1 (000923)).[4] In 2021 and 2022, he provided medical care to Plaintiff, an individual incarcerated at SNMCF. ECF 1 at 1; ECF 47 at UMFs 2–3 (citing ECF 45-1 at 1–135 (000004–000856); ECF 47-2 at 1 (000923)). On August 11, 2021, Plaintiff received an orientation on SNMCF medical services, including how to submit sick call requests. ECF 47 at UMF 4 (citing ECF 45-1 at 87 (000559)).

Plaintiff had a history of a heel spur on his left foot as well as back, shoulder, and knee pain. ECF 1 at 2; ECF 47 at UMF 5–8 (citing ECF 45-1 at 15–24, 26 (000133–000145, 000195)). In addition, he received ongoing medical care for pain management and Hepatitis C. ECF 47 at UMF 9 (citing ECF 45-1 at 2, 7, 94 (000005, 000029, 000629)). For pain management, Plaintiff received physical therapy from August 2021 through January 2022, as well as pain medication, including Lyrica, Tramadol, Ibuprofen, and pain-relieving rub. *Id*. at UMFs 10–11 (citing ECF 45-1 at 25–26, 66–67, 77–80, 94 (000194–000195, 000490–000492, 000512–000518, 000629); ECF 45-4 at 2 (000932)).

---

[3] The facts that follow come from Plaintiff's Complaint [ECF 1], Dr. Andrade's Motion for Summary Judgment [ECF 47], and Dr. Andrade's *Martinez* Report [ECF 45]. The facts set forth in this section are not "specifically controverted" with competent evidence by the non-moving party, *see* D.N.M.LR-Civ. 56.1, and are presented in the light most favorable to Plaintiff, *see Mann v. United States*, 204 F.3d 1012, 1016 (10th Cir. 2000).

[4] The Court's citations correspond with the document numbers and pagination generated by CM/ECF. For clarity, the Court has also included, in citation parentheticals, the Bates numbering found on documents submitted in conjunction with Dr. Andrade's *Martinez* Report.

On the evening of October 15, 2022, Plaintiff submitted a Health Services Request Form in which he complained of pain at an 8 out of 10 in his pancreas. *Id*. at UMF 14 (citing ECF 45-1 at 119 (000715)). The next morning, Plaintiff was scheduled for an October 17, 2022 provider appointment. *Id*.  At the scheduled appointment, Plaintiff was given Fiberlax and a Fleet enema and told to return to the clinic in two months. *Id*. at UMF 15 (citing ECF 45-1 at 93, 95 (000624, 000631)). Instead, Plaintiff returned to medical five days later with complaints of nausea, blood in his stool, and pain in his right lower quadrant. *Id*. at UMF 16 (citing ECF 45-1 at 126–135 (000847–000856); ECF 45-3 at 3 (000925)). Dr. Andrade ordered that Plaintiff be transported to the emergency room. *Id*.

Plaintiff was hospitalized at Mountainview Regional Medical Center ("Mountainview") on October 23, 2022,[5] due to rectal bleeding and right-sided abdominal pain. *Id*. at UMF 17 (citing ECF 45-1 at 31–40, 46–47, 120, 121–25 (000237–000246, 000254–000255, 000728–000744)). During his hospitalization, a CT scan was taken of his abdomen and pelvis, which showed: (1) a "[d]ilated small bowel . . . in the right lower quadrant and mild mesenteric inflammation in keeping with early partial small bowel obstruction versus ileus[;] wall of the cecum is thickened;" (2) "[m]icronodular appearance of the liver in keeping with cirrhosis"; and (3) "[n]o evidence for significant atherosclerotic plaquing or stenosis in the celiac axis, superior or inferior mesenteric arteries." *Id*. at UMF 18 (citing ECF 45-1 at 123–25 (000742–000744)). Plaintiff also underwent a colonoscopy on October 27, 2022. *See* ECF 45-1 at 46–47 (000254–000255).

---

[5] There is a conflict in the record as to the dates of Plaintiff's hospitalization at Mountainview. *Compare* ECF 45-3 at 3 ¶ 20 (000925) (Dr. Andrade's Affidavit indicating that Plaintiff was hospitalized from **October 22, 2022**, until October 31, 2022), *with* ECF 45-1 at 127 (000848) (NMCD's Emergency/Hospitalization Notification Form indicating Plaintiff was admitted to the hospital on **October 23, 2022**) *and* ECF 45-1 at 35 (00241) (Discharge Summary indicating Plaintiff was hospitalized beginning on **October 23, 2022**). Given the context provided by the record, it appears Plaintiff was transported away from SNMCF on October 22, 2022, but admitted to Mountainview on October 23, 2022. *See* ECF 45-1 at 127 (000848).

Plaintiff was discharged from Mountainview on October 31, 2022. ECF 47 at UMF 19 (citing ECF 45-1 at 35 (000241)). Mountainview's Discharge Summary included final diagnoses of chronic Hepatitis C, colitis, and inactive gastrointestinal hemorrhage. *Id*. Plaintiff was discharged "back to detention facility" with the following plan: (1) a "complete course of vancomycin; manage pain with Tylenol, lidocaine patch, home dose of tramadol, oxy *if absolutely necessary*"; (2) "[f]ollow up with GI in 4–6 weeks for a repeat colonoscopy (prior exam limited by acute inflammation, unsafe to proceed), biopsy results, and seek Hep C treatment"; and (3) "[r]egular [diet] but low residue for 2 weeks[.]" *Id*. at UMF 20 (citing ECF 45-1 at 37 (000243) (emphasis added)). The summary also identified "Discharge Medications": Acetaminophen 650 MG as needed for fever or mild pain, Ibuprofen SR 150 MG continue taking same as home, Lidocaine 4% Topical once per day, Lyrica 100 MG continue taking same as home, Oxycodone 5-325 MG as needed for pain, Tramadol 50 MG continue taking same as home, and Vancomycin HCL every 6 hours. *Id*. at UMF 21 (citing ECF 45-1 at 37 (000243)).

When Plaintiff returned to SNMCF after his eight-day hospitalization,[6] Dr. Andrade placed an order for him to receive a low residue diet. ECF 47 at UMF 22 (citing ECF 45-1 at 84 (00547); ECF 45-3 at 5 ¶ 25 (000927)). Plaintiff also received all medications Mountainview recommended at discharge except oxycodone, the opioid that Mountainview recommended only "if absolutely necessary." *Id*. at UMF 26 (citing ECF 45-1 at 74–78, 92 (000506–000514, 000623)). Plaintiff received Lyrica and Tramadol for pain management, both of which effectively manage pain. *Id*. at

---

[6] Contrary to Plaintiff's estimation in his Complaint that he was hospitalized "around 3 weeks," his hospital records show that he spent eight days in the hospital, from October 23, 2022, to October 31, 2022. Plaintiff does not come forward with any contrary evidence or otherwise dispute the accuracy of these records. *See* ECFs 55; 56; 61.

UMF 27–28 (citing ECF 45-1 at 74–78, 92 (000506–00514, 000623); ECF 45-3 at 5 ¶ 30 (000927)).

Opioid medication use is highly restricted in the prison context. *Id.* at UMF 23 (citing ECF 45-3 at 5 ¶ 26 (000927)); *see also* ECF 4 at 4. In declining oxycodone to Plaintiff, Dr. Andrade considered the prison setting and used his medical judgment to make decisions about Plaintiff's post-hospitalization medical care. ECF 47 at UMFs 24–25 (citing ECF 45-1 at 35–38 (000241–000244); ECF 45-3 at 5 ¶¶ 27–29 (000927)).

Six days after his discharge from Mountainview, Plaintiff submitted a Health Services Request complaining of pain in his liver and blood in his stool. ECF 47 at UMF 32 (citing ECF 45-1 at 113 (000708)). That same day, Plaintiff was seen by SNMCF medical personnel, who gave him pain medication. *Id.* at UMF 32 (citing ECF 45-1 at 114 (000709)). The next day, Plaintiff submitted another Health Services Request complaining again of pain in his liver. *Id.* at UMF 33 (citing ECF 45-1 at 112 (000707)). Although Plaintiff has been diagnosed with Hepatitis C, a liver disease, he has refused treatment for this condition for several years, including on August 24, 2021 [ECF 45-1 at 86 (000557)], December 30, 2022 [*id.* at 83 (000543)], March 20, 2023 [*id.* at 82 (000539)], and October 6, 2023 [*id.* at 4 (000012)]. *See also* ECF 47 at UMF 29–30 (citing ECF 45-1 at 1–135; ECF 45-3 at 6 ¶ 33 (000928); ECF 45-11 at 1–9 (NMCD CD-176200)). In addition to complaining of pain in his liver, Plaintiff noted in his November 7, 2022 Health Services Request that Dr. Andrade had not given him all of the pain medications recommended by Mountainview. UMF 33 (citing ECF 45-1 at 112 (000707)). Apart from oxycodone, Plaintiff continued to receive the medications recommended by Mountainview at discharge. *Id.* at UMF 34 (citing ECF 45-1 at 35–38 (000241–000244); ECF 45-1 at 74–76 (000506–000510); ECF 45-3 at 6 ¶ 37 (000928)).

12

An appointment was scheduled for Plaintiff to be evaluated by Dr. Andrade on November 21, 2022. *Id*. at UMF 33 (citing ECF 45-1 at 112 (000707)). A week prior to that appointment, SNMCF medical providers performed lab work on Plaintiff. *Id*. at UMF 35 (citing ECF 45-1 at 111 (000706)). For reasons unknown to Dr. Andrade, Plaintiff did not attend his November 21, 2022 appointment. *Id*. at UMF 36 (citing ECF 45-3 at 6 ¶ 39 (000928)).

In the months that followed, Plaintiff submitted several Health Services Requests in which he requested a follow-up colonoscopy. *Id*. at UMF 40 (citing ECF 45-1 at 108 (000699) (Jan. 10, 2023)); ECF 45-1 at 106 (000697) (Jan. 17, 2023)); ECF 45-1 at 102 (000689) (Feb. 6, 2023); ECF 45-1 at 101 (000688) (Feb. 12, 2023); ECF 45-1 at 98 (000681) (March 6, 2023); ECF 45-1 at 100 (000684) (March 18, 2023); ECF 45-1 at 99 (000683) (Apr. 13, 2023); ECF 45-1 at 97 (000677) (Apr. 27, 2023)). Dr. Andrade also submitted Referral Request forms, including on February 6, 2023, and March 6, 2023, in which he requested an appointment at the "GI Clinic" and a "repeat colonoscopy" on Plaintiff's behalf. ECF 45-1 at 44–45 (000252–000253).

Approximately four months after his discharge from Mountainview, on March 9, 2024, Plaintiff attended a consult for a colonoscopy. *Id*. at 41–42 (000248–000249). According to SNMCF's response to Plaintiff's April 7, 2023 Health Service Request, his follow-up colonoscopy had to be "reschedule[d] due to security" at SNMCF. *Id*. at 97 (000677). Although the record indicates Plaintiff was scheduled for a colonoscopy on May 1, 2023 [*see id*. at 99 (000683)], it was not performed until May 24, 2023.[7] ECF 47 at UMF 43 (citing ECF 45-1 at 28–29, 49, 118 (000203–000204, 000386, 000714)). Because Plaintiff did not follow the preparation procedures

---

[7] Dr. Andrade attests that Plaintiff received two follow-up colonoscopies: one on March 9, 2023, and one on May 24, 2023. ECF 47 at UMF 43. The Court's review of records upon which he relies, however, indicates that Plaintiff's March 9, 2023 appointment was a *consult* for a colonoscopy, whereas he underwent a colonoscopy on May 24, 2023. ECF 45-1 at 41–42 (000248–000249).

in advance of his May 24, 2023 colonoscopy, the provider who performed the procedure recommended he undergo another colonoscopy in six months. *Id*.

Jovita Tieso has been a Physical Therapist at SNMCF since approximately 1994. *Id*. at UMF 44 (citing ECF 45-4 at 1 ¶ 1 (000931)). Drawing upon her knowledge, skills, and experience, Ms. Tieso provided physical therapy services to Plaintiff from August 2021 to January 2022, to help him manage pain. *Id*. at UMF 45–46 (citing ECF 45-4 at 1–2 (000931–000932)). Among the pain management treatments provided to Plaintiff during this time were an ultrasound to both his lumbar spine area and left heel as well as biofreeze gel for his lumbar spine area. *Id*. at UMF 47 (citing ECF 45-4 at 2 ¶¶ 11–12 (000931–000932)).

Plaintiff submitted at least six sick call requests at SNMCF in which he complained of chronic pain, including on January 10, 2023 [ECF 45-1 at 107 (000698)], January 25, 2023 [*id*. at 105 (000694)], February 6, 2023 [*id*. at 102 (000689)], May 29, 2023 [*id*. at 13 (000105)], July 31, 2023 [*id*. at 11 (000096)], and August 15, 2023 [*id*. at 12 (000098)]. *See* ECF 47 at UMF 12. In response to these requests, medical providers saw Plaintiff on at least February 13, 2023 [ECF 45-1 at 77, 115 (000512, 000711) (refused steroid injection and requested increase in Lyrica)], March 13, 2023 [*id*. at 89 (000617) (refused steroid injection in right knee)], March 27, 2023 [*id*. at 81, 116 (000538, 000712) (received trigger point injection to knee)], June 5, 2023 [*id*. at 6 (000024)], September 6, 2023 [*id*. at 5, 10 (000021, 000094)]. *See* ECF 47 at UMF 13.

### 2. Analysis

#### a. *Medical Negligence Claim*

In his first claim, Plaintiff asserts that Dr. Andrade was medically negligent in treating his lower back, left shoulder, left heel bone spur, and right knee. ECF 1 at 2. Generally speaking, "a negligence claim 'requires the existence of a duty from a defendant to a plaintiff, breach of that

duty, which is typically based upon a standard of reasonable care, and the breach being a proximate cause and cause in fact of the plaintiff's damages.'" *St. Paul Fire and Marine Ins. Co v. Sedona Contracting, Inc*., 474 F. Supp. 3d 1211, 1216 (D.N.M. 2020) (citations omitted).

Here, Plaintiff does not allege any facts, let alone come forward with any evidence on summary judgment, to support the elements of a medical negligence claim. Although he alleges Dr. Andrade was his "caregiver and . . . responsible for [his] well-being" while he was incarcerated at SNMCF, he does not identify any specific actions that Dr. Andrade took or failed to take with respect to his physical conditions. ECF 1 at 1–2. Instead, he makes the conclusory assertion that Dr. Andrade "is responsible for all injur[ie]s past[,] present[, and] future [to include] a bone spur, right knee, left shoulder[,] lower back." ECF 55 at 1. According to Plaintiff, "all these injur[ie]s were brought to defendant['] attention [and] he refused to address them."[8] *Id*. at 1-2.

At bottom, Plaintiff misunderstands medical negligence. He does not specify how Dr. Andrade's conduct failed to satisfy the applicable standard of care or caused his various injuries and pain. To the contrary, Plaintiff appears to suggest that simply because he experienced physical impairments and pain, the facility's caregiver must be at fault. But to establish liability, Plaintiff must show "some chain of causation initiated by some negligent act or omission of [Dr. Andrade], which in legal terms is the cause in fact or the 'but for' cause of [his] injury." *See Wilcox v. Homestake Mining Co*., 619 F.3d 1165, 1167 (10th Cir. 2010) (citation omitted). Neither Plaintiff's Complaint nor his response in opposition identify the chain of events that he alleges caused his

_____

[8] In his "Request for Relief," Plaintiff indicates that he seeks "a knee support, ankle support[,] lower back support[,] surgery on le[f]t shoulder." ECF 1 at 5. Beyond making these "requests" in his Complaint, Plaintiff does not point to any competent evidence from which a reasonable inference could be drawn that his physical conditions necessitated supports or surgery.

medical conditions; nor do they establish Dr. Andrade's fault. Rather, Plaintiff's medical records indicate that the conditions of which he complains were chronic and pre-existing, preceding any contact with Dr. Andrade. Moreover, the medical records show that Plaintiff received ongoing medical care and pain management for these conditions throughout his incarceration at SNMCF, including oral pain medication, biofreeze gel, steroid injections, and physical therapy.

In sum, there is no inference from the record that any acts or omissions by Dr. Andrade caused or exacerbated Plaintiff's physical conditions or his pain, and Plaintiff has not pointed to evidence that creates a genuine dispute as to any material fact with respect to his medical negligence claim. Dr. Andrade, on the other hand, has demonstrated that he is entitled to judgment as a matter of law, and the Court therefore recommends dismissal with prejudice of Plaintiff's medical negligence claim.

### b.  *Deliberate Indifference Claims*

Construing Plaintiff's second claim broadly, the Court understands him to assert that Dr. Andrade was deliberately indifferent to his health or safety (1) by refusing to dispense medication recommended by Mountainview providers at the time of his October 31, 2022 discharge from Mountainview, and (2) by failing to schedule an appointment for a follow-up colonoscopy as recommended by Mountainview.[9] *See* ECF 1. As to medications, Plaintiff explains that during his hospitalization he received "a morphine shot [and] after 3 hours . . . OxyCodone" as well as a "fentan[y]l patch," whereas post-hospitalization Dr. Andrade dispensed only "100 mg lyric[]a and

---

[9] The Court does not read Plaintiff's Complaint to assert that Dr. Andrade was deliberately indifferent to his medical needs in October 2022, when Plaintiff experienced a gastrointestinal bleed. *See Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 1999) (observing that the prisoner "select[s] what harm to claim"). Nor could he. The record indicates that Dr. Andrade promptly ordered that Plaintiff be transported to the emergency room when he reported pain in his right lower quadrant and blood in his stools. *See* ECF 45-3 at 3 ¶ 19 (citing ECF 45-1 at 126–135 (000847-000856)).

2 tramad[o]l." *Id.* at 3. As to a repeat colonoscopy, Plaintiff complains that he did not receive the "follow up [appointment] within [the] 4 to 6 weeks" recommended by Mountainview. *Id.*

A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. *See Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (citing *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)). "Deliberate indifference" involves both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component is met if the deprivation is "sufficiently serious." *Id.* A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)). The objective component "limit[s] claims to significant, as opposed to trivial, suffering." *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005). The subjective component is satisfied if a prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.

Plaintiff maintains that Dr. Andrade wrongfully ignored all discharge instructions from Mountainview. ECF 1 at 3 ("[O]nce back at Southern[,] Dr. Andrade . . . ignored all instructions."). He intimates that Dr. Andrade should have provided him with pain medication of a similar strength to the medication he received while hospitalized for a gastrointestinal bleed (*i.e.*, morphine, oxycodone, and fentanyl). *Id.* But the record does not support Plaintiff's assertion that Dr. Andrade ignored Mountainview's discharge instructions or failed to provide proper pain medication. Mountainview providers recommended that Plaintiff receive acetaminophen, Ibuprofen, Lidocaine, Lyrica, Tramadol, and "if absolutely necessary" oxycodone. Plaintiff does not dispute that he received each of these recommended medications, save oxycodone. Indeed, he

17

affirmatively admits that Dr. Andrade provided Lyrica and Tramadol to relieve his pain [*see* ECF 1 at 3], and he does not dispute Dr. Andrade's attestation that "Lyrica and Tramadol are effective pain management medications." Nor does Plaintiff dispute that Dr. Andrade relied upon his medical judgment and considered the prison context in deciding which medications to dispense to Plaintiff once he returned to SNMCF following his hospitalization. Under the circumstances, and without any evidence that the pain medication Dr. Andrade supplied was not effective in relieving Plaintiff's pain, the Court cannot say that the harm of which Plaintiff complains (*i.e.*, the failure to provide oxycodone) was "sufficiently serious" to meet the objective prong of the deliberate indifference analysis.

As for the subjective prong, the Court is equally unpersuaded. Rather than demonstrating that Dr. Andrade consciously disregarded Plaintiff's need for pain relief, the record shows that Dr. Andrade exercised his medical judgment in providing Plaintiff with medications he knew to be effective pain relievers. That the doctor declined to dispense a highly-regulated opioid that Plaintiff's discharging medical providers recommended only "if absolutely necessary" is hardly indicative of deliberate indifference.

To the extent Plaintiff complains that Dr. Andrade wrongfully delayed the scheduling of his follow-up colonoscopy, the record again fails to show deliberate indifference. First, Plaintiff has not pointed to any evidence or authority that would suggest a few-months delay in receiving a follow-up gastrointestinal consult, given Plaintiff's medical circumstances, was a sufficiently serious harm to meet the objective prong of the deliberate indifference analysis. For instance, he does not allege that he endured significant suffering on account of the delayed colonoscopy or even that the colonoscopy he sought ultimately offered any relief from his colitis. *See Sealock*, 218

F.3d at 1210 ("Delay in medical care only constitutes a [constitutional] violation where the plaintiff can show that the delay resulted in substantial harm") (citation omitted).

Plaintiff likewise fails to cite any evidence to satisfy the subjective prong of the deliberate indifference standard. In this regard, he must demonstrate that Dr. Andrade "knew he faced a substantial risk of harm and disregarded that risk, 'by failing to take reasonable measures to abate it.'" *Hunt*, 199 F.3d at 1224 (quoting *Farmer*, 511 U.S. at 847). The record reveals that Dr. Andrade submitted a colonoscopy referral on Plaintiff's behalf by at least February 6, 2023, three months after Plaintiff's discharge from Mountainview. ECF 45-1 at 45 (000253) (Referral Request for repeat colonoscopy, noting that Plaintiff required a repeat colonoscopy to fully assess his colon and to confirm his diagnosis after his previous colonoscopy could not be fully completed due to inflammation). Dr. Andrade followed up a month later with *another* referral request, explaining that Plaintiff still needed a "repeat colonoscopy." *Id*. at 44 (000252). On March 9, 2023, Plaintiff attended an off-site colonoscopy consult, at which the outside medical provider reported that he was doing well, was having one to two bowel movements daily *without blood* but was experiencing some right-sided abdominal cramps. *Id*. at 41 (000248) (emphasis added). On April 3, 2023, Dr. Andrade submitted yet another referral request for Plaintiff to receive a colonoscopy, in which he noted Plaintiff's medical history of severe right-sided colitis and prior hospitalization. *Id*. at 51 (000395). Plaintiff ultimately underwent a follow-up colonoscopy on May 24, 2023. *Id.* at 27, 28, 49, 118 (000200, 00203, 000386, 000714). That Dr. Andrade made multiple referral requests in the months following Plaintiff's hospitalization aimed at obtaining a gastrointestinal consult and repeat colonoscopy undermines Plaintiff's claim that Dr. Andrade consciously disregarded his need for such a procedure.

Insofar as Plaintiff's claim is premised on a *delay* in providing medical care, he must "show that the delay resulted in substantial harm." *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quoting *Sealock*, 218 F.3d at 1210). But Plaintiff does not identify any adverse medical problems that could have been avoided had he received an earlier colonoscopy. Nor does he point to evidence that he endured increased or prolonged pain as a result of the few-months delay. Correspondingly, there is no indication that Plaintiff's follow-up colonoscopy ultimately relieved pain or symptoms he was experiencing.

Moreover, delays in obtaining procedures performed by specialists are an unfortunate reality, both inside and outside the prison setting. And transportation and security issues further contribute to delays in incarcerated individuals obtaining outside medical care. ECF 45-3 at 7 (000929) (Dr. Andrade attesting that "[o]utside medical appointments are scheduled [for SNMCF inmates] with consideration of outside provider appointment availability, availability for security transport, and facility security issues"). As a result, "society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillan*, 503 U.S. 1, 9 (1992). Here, relevant medical records suggest that security issues at SNMCF contributed to the delay in Plaintiff undergoing a colonoscopy on at least one occasion. *See* ECF 45-1 at 97 (000677) (response to Plaintiff's April 7, 2023 Health Service Request indicating that Plaintiff's follow-up colonoscopy had to be rescheduled due to "security"); *see also* ECF 45-1 at 99 (000683) (response to Plaintiff's April 13, 2023 Health Service Request indicating that Plaintiff had been scheduled for a colonoscopy on May 1, 2023).

Although a medical professional who "refuses to fulfill [a] gatekeeper role" in obtaining medical services on an inmate's behalf may be liable for denying access to medical care, *see Sealock*, 218 F.3d at 1211, there is no indication in the record here that any scheduling delay was

20

attributable to Dr. Andrade or to his conscious disregard for Plaintiff's need for a follow-up colonoscopy. Dr. Andrade attests that "Plaintiff was scheduled for a follow up colonoscopy as soon as was available" [ECF 45-3 at 7 (000929)], and Plaintiff does not point to evidence to suggest otherwise. At worst, Plaintiff was taken for a gastrointestinal consult three months after Mountainview recommended he receive a follow-up appointment, with his follow-up colonoscopy taking place two and a half months later. In the meantime, Plaintiff was "doing well [and] was having one to two bowel movements daily without blood." ECF 45-1 at 41 (000248).  Under these circumstances, there is no reasonable inference that a delay in obtaining a repeat colonoscopy constituted an excessive risk to Plaintiff's health, or that Dr. Andrade unreasonably or wantonly inflicted pain on Plaintiff by failing to obtain a colonoscopy referral on a more expedited timeline.

Plaintiff having failed to point to any evidence to satisfy either the objective or subjective components of his deliberate indifference claims, the Court recommends Dr. Andrade's Motion for Summary Judgment [ECF 47] be granted and Plaintiff's claims be dismissed with prejudice.

IV.   **CONCLUSION**

The only reasonable inference from the record before the Court is that Dr. Andrade provided Plaintiff medical care that was neither negligent nor constitutionally inadequate. Indeed, the pleadings together with the record indicate that there is no genuine issue as to any material fact and that Dr. Andrade is entitled to judgment as a matter of law on each of Plaintiff's claims.

For the reasons stated above, the Court **RECOMMENDS** that:

1.   Plaintiff's Motions for Appointment of Counsel [ECFs 49; 53; 54; 59; 62; 66] be **DENIED**;

2.   Plaintiff's Motion for Production of Documents [ECF 51] be **DENIED**;

3.   Plaintiff's Motion for Summary Judgment [ECF 42] be **DENIED**;

4. Plaintiff's Motion to Go to Trial [ ECF 56] and Motion to Set Trial [ECF 61] be

   **DENIED**;

5. Dr. Andrade's Motion for Summary Judgment [ECF 47] be **GRANTED;** and

6. Plaintiff's Complaint [ECF 1] be **DISMISSED WITH PREJUDICE**.

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE